# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DEANNA M. LEE,

    **Plaintiff,**

v.

TRANSAM TRUCKING, INC.,

    **Defendant.**

Case No. 17-2150

## MEMORANDUM & ORDER

Plaintiff Deanna M. Lee claims that defendant TransAm Trucking, Inc. violated the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA"), which prohibits employers from discriminating against employees based on disability, including pregnancy, and Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, which prohibits employers from discriminating based on gender, including pregnancy. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k). This matter comes before the court upon defendant's Motion for Summary Judgment (Doc. 50). For the reasons explained below, defendant's motion is granted.

**I.    Facts**

The following facts are either stipulated in the pretrial order—now the operative pleading—are uncontroverted in the parties' briefing, or where controverted, are viewed in the light most favorable to the plaintiff.

*Plaintiff's Employment with Defendant*

Defendant is a transportation company that primarily uses tractor trailers to transport refrigerated product throughout the United States. Plaintiff worked for defendant's wholly owned subsidiary TAFS—formerly TransAm Financial Services, Inc.— starting around June 22, 2015 as a Sales Account

Manager. TAFS is a factoring company, meaning it targets smaller transportation companies, and buys their accounts receivable. Plaintiff's job duties were "among other things, to make cold calls, bring in new business, and collect supporting documents to set up the new clients." (Doc. 55, at 2.) Plaintiff was expected to do 2.5 hours outbound call time known as "talk time" or 70–75 outbound dials daily and she was required to meet a sales quota of closing five new clients each month. Defendant's telephone system automatically recorded and generated daily reports of each sales account manager's daily usage, including: each manager's name; extension; time logged into the system; outbound calls made; and outbound call time.

George McWilliams supervised plaintiff between June 2015 and December 2015. Ryan Haase supervised her from January 2016 through May 2016, when her employment was terminated. Nick Bird, Emily Eagan, Jessica Nelson, Josh Goode, and Jaime Heredia were also employed by defendant as management while plaintiff worked there.

*Plaintiff's Pregnancy*

Plaintiff became pregnant in November 2015 and informed defendant that same month. During her pregnancy, plaintiff was not entitled to Family Medical Leave Act ("FMLA") leave because she had not been employed by defendant for one year. Regardless, defendant approved discretionary intermittent leave for plaintiff to attend pregnancy-related doctor appointments. Despite plaintiff's failure to provide defendant with a Certification of Health Care Provider form until February 2016— the form was requested on November 24, 2015— defendant did not deny plaintiff permission to attend any pregnancy-related appointments, and she did attend several between November 2015 and May 2016.

Plaintiff could perform all essential job functions of her job and in February 2016 provided a physician's note to defendant that stated she was able to work without restriction. Plaintiff testified

that she had a high-risk pregnancy, gestational diabetes, and preterm labor, and that these were the only disabilities she suffered while working for defendant. Plaintiff managed her gestational diabetes by monitoring her blood sugar levels and watching her diet. Plaintiff testified that her pregnancy was high-risk because she had preterm contractions and could have had preterm labor. Plaintiff took medication to manage her preterm contractions. Plaintiff's baby was born May 18, 2016. Any and all preterm contractions she had before May 17, 2016 were nonproductive or non-labor contractions.

Plaintiff testified that in May 2016, Mr. Haase asked her, in front of co-workers, whether she was going to need to put puppy pads around her chair in case her water broke. Plaintiff testified that on May 16, 2016, Mr. Haase asked her how she was feeling and whether she thought her doctor was going to put her on bed rest. Plaintiff responded that she did not know. He had previously asked her how she managed her gestational diabetes.

*May 16–17, 2016—The Termination of Plaintiff's Employment*

On May 16, 2016, defendant's director of sales, Jaime Heredia, reported to human resources that plaintiff's talk time was "considerably low," that she only had one closed deal for the month, and that she would not meet the monthly expectations at her current pace. (*Id.* at 8.) Defendant issued a Disciplinary Report dated May 17, 2016, the day after Mr. Heredia's email detailing plaintiff's performance. It stated, "Disciplinary action taken: Written Warning." (*Id.* at 9.)

At around 2:00 p.m. on May 17, 2016, Ryan Haase and Nick Bird met with plaintiff in a private room to discuss the written warning. Plaintiff refused to sign the report because she believed it contained false information, including the amount of talk-time she had accrued. Plaintiff claims that she repeatedly received good feedback from management about her performance at work. Plaintiff claims that her preterm labor and contractions started because of the meeting and that she told Mr. Haase and Mr. Bird about her condition. She claims they responded that the meeting would only take a minute. Plaintiff left

the meeting for a pre-scheduled and approved pregnancy-related doctor's appointment, at which her doctor put her on bed rest.

After the meeting, both Mr. Haase and Mr. Bird reported that plaintiff said the report was "bullshit" multiple times during the meeting. Plaintiff claims that the memoranda allegedly submitted by Mr. Haase and Mr. Bird were drafted by Emily Eagan, defendant's human resources VP.

According to defendant's written policies, signed by plaintiff, insubordination or disrespectful conduct are grounds for immediate termination of an employee's employment. Defendant claims that after the 2:00 p.m. meeting, before plaintiff's doctor placed her on bed rest, human resources had decided to terminate plaintiff's employment based on her insubordinate and disrespectful behavior. Ms. Eagan e-mailed Mr. Haase, Mr. Bird, Mr. Heredia, Ms. Vilarreal, and Mr. Goode on May 17, 2016 at 3:17 p.m. asking for Mr. Haase and Mr. Bird's "very detailed, accurate, description of what happened in the meeting today with Deanna." (Doc. 51-15.) The e-mail stated that "We will be discharging her IF she returns to work tomorrow due to her insubordination. It's pretty apparent that she intended to end her employment. I will plan on being down at TAFS tomorrow before 8am so we can terminate her employment." (*Id.*)

Plaintiff claims this decision was made after plaintiff texted Mr. Haase on May 18, 2016, to inform him that she had been placed on bed rest. Mr. Haase responded to plaintiff's text, as dictated by Ms. Eagan, "FYI – After our meeting yesterday, we considered your employment to be terminated. You will be receiving a letter from HR." (Doc. 58-8.)

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact." *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))). Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him. Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). Summary judgment is not a "disfavored procedural shortcut"—it is an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**III.     Discussion**

Plaintiff makes six claims in the pretrial order: (1) Defendant violated the ADA by terminating her employment based on her pregnancy and related disabilities; (2) by harassing her based on her pregnancy and related disabilities; (3) by retaliating against her for requesting leave for her pregnancy

or related conditions by terminating her employment for requesting such leave; (4) and by falsifying her work performance records; (5) that defendant violated Title VII by terminating plaintiff's employment based on her gender and pregnancy; and (6) by harassing her because of her pregnancy and gender.

**A. Whether Plaintiff's Claims Exceed The Scope Of Her KHRC Charge**

Defendant claims that it is entitled to summary judgment because the court lacks subject matter jurisdiction over plaintiff's ADA and Title VII harassment claims and her ADA retaliation claim, because she failed to exhaust administrative remedies. Exhaustion of administrative remedies is a prerequisite to federal subject-matter jurisdiction over a plaintiff's ADA or Title VII claim. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). To exhaust administrative remedies plaintiff needed to file a charge with the Equal Employment Opportunity Commission ("EEOC") or, as she did in this case, the Kansas Human Rights Commission ("KHRC"). *Robles v. Amarr Garage Doors*, No. 11-2707-JAR, 2012 WL 2359426, at *1, *3 (D. Kan. June 20, 2012). A plaintiff's charge must sufficiently present each claim to the administrative agency so that it can investigate and resolve the dispute. *Id.* Only once the administrative agency issues a right to sue letter may the plaintiff "then file a lawsuit based on the conduct described in the charge." *Id.*

When determining whether a plaintiff's claims were part of an administrative charge, the court looks at whether the charge "identif[ied] the type of discrimination complained of, the alleged harasser, and an approximate time period to be minimally sufficient to satisfy the requirements for the content of the charge and the purposes of the notice requirement." *Id.*

Defendant argues that plaintiff's ADA and Title VII harassment claims and her ADA retaliation claim should be dismissed because she did not explicitly reference facts relating to those claims in her charge of discrimination. Defendant notes that plaintiff's harassment claims should be construed as hostile work environment claims, because "[g]eneral harassment alone is not actionable." *Williams v.*

*FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir. 1994).

Whether a plaintiff's work environment was hostile depends on "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). "[P]laintiff must say something in the charge to put defendant on notice that she believes she has been the victim of a hostile work environment based on" gender, disability, pregnancy, or another protected class. *Allen v. Magic Media, Inc.*, No. 09-4139-SAC, 2010 WL 4739748 at *1, *9 (D. Kan. Nov. 16, 2010). For hostile work environment claims, the court looks at the totality of the circumstances to see whether "the workplace was permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and if the plaintiff was subjected to this abusive environment" based on her disability, pregnancy, or gender. *Williams*, 849 F.3d at 897.

*Plaintiff Failed To Exhaust Administrative Remedies For Her Harassment Claims*

Plaintiff does not mention hostile work environment or harassment in her charge. While this is not dispositive, the only allegations plaintiff raises that could be construed to put defendant on notice of such a claim are her statements that Mr. Hasse asked her "a number of personal questions about [her] pregnancy. The questions were inappropriate and embarrassing, and took [her] by surprise, as no management employee had previously inquired into the details of [her] health or pregnancy," and that the meeting on May 17, 2016, intimidated and distressed her. (Doc. 51-19, at 2.) These statements are conclusory and provide insufficient detail about the situation plaintiff found inappropriate or embarrassing. They are limited to specific instances on two days—May 16, 2016 and May 17, 2017.

But plaintiff worked for defendant for close to a year. Plaintiff's two harassment claims are therefore dismissed for lack of subject matter jurisdiction for failure to exhaust administrative remedies.

*Plaintiff Exhausted Administrative Remedies On Her ADA Retaliation Claim*

Defendant argues that plaintiff's ADA retaliation claim should likewise be dismissed for failure to exhaust administrative remedies. Plaintiff checked the boxes for retaliation and disability on her KHRC Charge of Discrimination Form under the section asking on what bases she claimed defendant discriminated against her. Again this alone is not dispositive, but plaintiff discusses sufficient facts in her charge to put defendant on notice of a retaliation claim. She explains that she was told her employment was terminated directly after she informed Mr. Hasse that her doctor put her on bed rest. Plaintiff sufficiently exhausted administrative remedies to pursue her ADA retaliation claim.

**B. Plaintiff's ADA Retaliation Claim—Leave Request**

"The ADA protects individuals with real or perceived physical disabilities or mental impairments that substantially limit major life activities." *Williams*, 849 F.3d at 897 (quoting *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) (citing 42 U.S.C. § 12102(c)(C))). The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden shifting framework applies to ADA cases where there is no direct evidence of discrimination. *Id.* (citing *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011)). Under this framework, plaintiff bears the initial burden to establish a prima facie case of discrimination by showing: "(1) that [s]he engaged in protected [activity] . . . , (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1193 (10th Cir. 2007) (quoting *Haynes v. Level 3 Commc'ns LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)).

Plaintiff claims that her request for leave based on her need for bed rest was a protected activity. Defendant argues that it is entitled to summary judgment on plaintiff's ADA claim for retaliation based on plaintiff's request for bed rest because it had no knowledge of her need for bed rest when it decided to terminate her employment. Plaintiff responded that defendant cannot claim that "it had no knowledge of Plaintiff's pregnancy, disabilities, or the need for bed rest until after it decided to terminate her employment." (Doc. 55, at 41.) But plaintiff's characterization of the facts misses the point. Plaintiff's retaliation claim is based on her employment being terminated because she requested bed rest. The issue then, is when did plaintiff request leave because her doctor had placed her on bed rest, and when did defendant decide to terminate her employment. The first and only time plaintiff requested leave for bed rest was in her May 18, 2016 text at 6:52 a.m. that said "My doctor put me on bed rest. I'll be on [sic] later today to bring the doctors [sic] notes in." (Doc. 58-9.)

Plaintiff's argument is that defendant decided to terminate her employment after that text was sent on May 18th, not on the previous day after her meeting with Mr. Haase and Mr. Bird. Plaintiff suggests that defendant did not decide to terminate her employment, and did not do so, until May 18th when Ms. Eagan dictated Mr. Hasse's response to her text: "FYI- After our meeting yesterday, we considered your employment to be terminated. You will be receiving a letter from HR." (*Id.*)

What plaintiff does not explain, is regardless of who drafted defendant's Exhibits E–H, the memoranda addressed by Mr. Haase and Mr. Bird following their meeting with plaintiff, were drafted on May 17th. Most importantly, plaintiff does not address Ms. Eagan's May 17th, 2016 e-mail to Mr. Haase, Mr. Bird and others explaining that "We will be discharging her IF she returns to work tomorrow due to her insubordination. It's pretty apparent that she intended to end her employment. I will plan on being down at TAFS tomorrow before 8am so we can terminate her employment." (Doc. 51-15.) Plaintiff's suggestion that Ms. Eagan "orchestrated and created a paper trail supportive of Defendant's

version of the May 17 meeting, at which she was not present, just minutes after Plaintiff informed Defendant of her placement on bed rest," is not a characterization of the facts supported by the evidence. (Doc. 55, at 42.) Those documents and the metadata produced with them show that they were created on May 17th, after plaintiff's meeting with Mr. Haase and Mr. Bird, and before she requested bed rest.

The issue with plaintiff's retaliation claim is the third element—causation. As defendant's briefing argues, its decision to terminate plaintiff's employment cannot be because of her request for leave when the request came after defendant's decision to terminate her employment was made. Defendant would not have known that plaintiff was engaging in a protected activity until after her employment was terminated. *See Jones*, 502 F.3d at 1194–95. Plaintiff has failed to present an issue of material fact either suggesting that she requested leave for bed rest prior to defendant's decision to terminate her employment on the May 17th, or that defendant decided to terminate her employment after her text requesting leave on May 18th. Defendant is therefore entitled to summary judgment on plaintiff's ADA termination claim because her request for leave came after defendant had decided to terminate her employment.

### C. Plaintiff's ADA Retaliation Claim—Falsified Work Performance Records

Plaintiff claims that she engaged in a protected activity by requesting medical leave related to her pregnancy and that because of this activity, defendant falsified her work performance records, which claimed to be a performance review or written warning, as part of a plan to terminate her employment because of her pregnancy.

Defendant argues that (1) there is no evidence in the record that plaintiff's performance records were falsified, (2) even if they were falsified, plaintiff was fired for insubordination, not for her work performance, (3) a written warning is not an adverse employment action, and (4) plaintiff's temporal

proximity argument does not consider her various previous doctor's appointments and the fact that defendant knew she was pregnant since at least November 2015.

*There Is No Credible Evidence That Plaintiff's Records Were Falsified*

Plaintiff does not dispute that TAFS used a phone system that recorded and tracked sales account managers' phone usage—including plaintiff's. The system would track her name, extension, the time she was logged into the system, the number of calls made, and her total talk time. The system automatically generated daily reports with this information. She does not dispute that on May 16, 2016, Mr. Heredia reported to HR that she was not meeting performance expectations based on these reports, or that on May 17, 2016, HR created a disciplinary report that issued plaintiff a written warning. Ms. Eagan testified that the disciplinary report was a way to follow up on Mr. Heredia's concerns by giving plaintiff some goals to help her meet expectations. Ms. Eagan testified that the purpose of the report was not to fire plaintiff. Plaintiff does not dispute that on May 16, 2016, she had six minutes of the 2.5 hours talk time she was expected to generate daily.

In support of her claim that the disciplinary report was falsified, plaintiff cites primarily to her own deposition testimony consisting of conclusory statements. She claims that the meeting was set up to obtain her signature on falsified documents, that Mr. Haase and Mr. Bird said they knew the documents were falsified, that another co-worker met her outside the door and said that he thought what defendant was doing to her was wrong, and that it was all defendant's plan to terminate her employment based on her pregnancy.

Plaintiff also cites three former defendant employees' deposition testimony: Jerrome Morgan, Gary Piane, and Katherine Mahnken. Mr. Piane testified that one time while he was working for defendant, defendant fired five or more people at one time, walking them all out at once in front of their co-workers, and that he found that unprofessional. This testimony has no bearing on whether

plaintiff's work documents were falsified. Ms. Mahnken testified that she found defendant's work environment hostile and that they used fear and intimidation, that the managers cursed and yelled at people and that if people stood up to them they were fired in retaliation. This testimony is irrelevant to plaintiff's claim that defendant falsified her work documents to fire her because she was pregnant. Mr. Morgan testified that defendant sometimes treated its employees "like a piece of crap." (Doc. 55-11, at 3.) Mr. Morgan also testified that he believes defendant placed him on a performance plan in retaliation for him making an undisclosed comment at a group meeting. However, Mr. Morgan admitted that he could not say the disciplinary report in his case was false, and he never went back and determined whether he had underperformed or not; he just believed it was false.

None of this evidence is sufficient to create an issue of material fact. Plaintiff does not substantively address the statements regarding her performance in the written warning or in Mr. Heredia's e-mail, except to say that they are false. Apart from plaintiff's conclusory statements that the documents were falsified, there is no evidence in the record that they were. In fact, plaintiff failed to contest statements of fact that her performance did not meet expectations. Because no rational trier of fact could find, based on the record evidence, that defendant falsified plaintiff's work documents, defendant is entitled to summary judgment as a matter of law on plaintiff's ADA retaliation claim.

*Plaintiff Provided Insufficient Evidence That Defendant Falsified Documents To Fire Her*

Even if plaintiff had raised an issue of material fact as to the falsity of her work documents, she has provided no evidence that defendant planned to use the documents as a pretextual basis for firing her. To the contrary, the record evidence establishes a timeline that shows defendant accommodated plaintiff's leave even though it would not have been required to do so by law. Plaintiff did not qualify for FMLA leave because she had not worked for defendant for at least a year when she became pregnant. She did not get the required paperwork to defendant until February 2016. Despite this,

defendant never denied plaintiff leave when she requested it for pregnancy-related doctor visits. From November to mid-May, defendant granted every request. Plaintiff has not produced sufficient evidence to create an issue of material fact about whether Mr. Heredia's e-mail discussing her under-performance, the subsequent written warning, the meeting with Mr. Haase and Mr. Bird, and her termination for insubordination were all part of a plan to fire her because she was pregnant. For this additional reason defendant is entitled to summary judgment on plaintiff's ADA retaliation claim.

### D. Plaintiff's ADA and Title VII Disability Discrimination Claims

Only plaintiff's ADA and Title VII claims that defendant terminated her employment because she was pregnant remain.

*Prima Facie Case Of Discrimination*

Under both the ADA and Title VII, plaintiff bears the initial burden to prove a prima facie case of employment discrimination by demonstrating that: (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others (e.g., the position at issue remained open after the adverse employment action)." *Exum v. U.S. Olmpic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004); *see also Williams*, 849 F.3d at 896, (quoting *Koessel*, 717 F.3d at 742); *Semsroth v. City of Wichita*, 304 F. App'x 707, 716 (10th Cir. 2008). Plaintiff may "establish a prima facie case by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII" and the ADA. *Young v. United Postal Serv., Inc.*, 125 S. Ct. 1338, 1354 (2015).

It is undisputed that plaintiff, as a pregnant woman, was a member of a protected class; that she was qualified for her position; and that she suffered an adverse employment action—she was fired. What

is in dispute is whether defendant had discriminatory intent or animus and whether plaintiff was treated less favorably than others.

Plaintiff does not suggest that she was treated differently than other employees and has therefore failed to address an element of a prima facie case. However, the court does not rely on this basis alone for finding that she does not meet her burden. To show discriminatory intent, she cites only to: (1) Mr. Hasse's comments, including his alleged puppy pad comment, his inquiry into how she was managing her gestational diabetes, and his question about whether she was likely to be put on bed rest; and (2) Ms. Eagan's alleged retroactive creation of a paper trail validating the decision to fire plaintiff. The court already explained the lack of a credible record supporting plaintiff's second argument. The paper trail plaintiff complains of began on May 16, 2016 with Mr. Heredia's e-mail. There is no evidence it initiated with Ms. Eagan at all. Ms. Eagan's first actions were also prior to the termination of plaintiff's employment with e-mails and potentially memoranda drafted for or in cooperation with Mr. Haase and Mr. Bird. This second basis is insufficient to show discriminatory intent.

The sole issue then, is whether Mr. Haase's statements and conduct alone raise an inference of illegal discriminatory intent. The court finds that such an inference is not reasonable. Mr. Haase was plaintiff's direct supervisor between January 2016 and the date she was fired in mid-May, 2016. Plaintiff testified that in early May 2016, Mr. Haase asked her whether she was going to need to put puppy pads down around her desk in case her water broke. He allegedly did this in front of her co-workers, a few of whom laughed at the comment. This statement, if it occurred, was unprofessional, insensitive, and offensive. But plaintiff does not explain how this single instance of Mr. Haase making an inappropriate comment is sufficient to infer that Mr. Haase or defendant acted with discriminatory animus.

Apart from this comment, plaintiff admitted that Mr. Haase acted in a professional manner towards her.

> Q. Okay. And you've told me about comments that Mr. Haase made to you and – that you found to be offensive. And did you have a – what kind of working relationship did you have with Mr. Haase?
>
> A. Professional.
>
> Q. Was he professional to you?
>
> A. No.
>
> Q. And in what way was he not professional?
>
> A. The comments that he made about the puppy pads.
>
> Q. Anything else?
>
> A. No.
>
> Q. Other than that did he treat you in a professional manner?
>
> A. Yes.

(Doc. 55-4, at 21–22.) Plaintiff claims that Mr. Haase inquired at one point about how she would manage her gestational diabetes, whether she had to check her blood sugar, and whether she thought she would have to be put on bed rest. Nothing about these comments alone suggests an inference of discriminatory animus would be appropriate in this case. Mr. Haase was plaintiff's immediate supervisor during the last four months or so of her employment. She requested leave from him.

Plaintiff provides no evidence that might lead to an inference of discrimination, such as if defendant tried to get plaintiff to quit her job, treated non-pregnant temporarily-disabled employees differently, tried to sabotage her progress at work, tried to keep her from obtaining benefits, or denied her leave requests. Mr. Haase's single inappropriate comment does not lead to an inference of discrimination. Defendant is therefore entitled to summary judgment on plaintiff's remaining ADA and Title VII claims.

If plaintiff had made a prima facie showing under the *McDonnell Douglas* burden shifting framework, the burden would shift to defendant to put forth a legitimate non-discriminatory reason for terminating plaintiff's employment.

*Legitimate Non-Discriminatory Basis For Terminating Plaintiff's Employment*

Defendant argues that it had a legitimate non-discriminatory basis for terminating plaintiff's employment—her insubordinate and unprofessional behavior during the May 17, 2016 meeting with Mr. Haase and Mr. Bird. For the reasons discussed above, defendant has established a facially nondiscriminatory basis for firing plaintiff. The burden would then shift back to her to establish that defendant's non-discriminatory basis is pretextual.

*Pretext*

"A party may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Brown*, 490 F. App'x at 958 (quoting *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011)).

Plaintiff argues that defendant's sole reason for firing her was because she used the word "bullshit" in the meeting with Mr. Haase and Mr. Bird. Because she denies that she used the word, she concludes that a genuine issue of fact remains as to whether defendant's purported legitimate non-discriminatory basis for firing her is pretextual. She also returns to her argument that Ms. Eagan's actions creating a paper trail to support the termination of plaintiff's employment and Ms. Eagan and Mr. Hasse's inconsistent deposition testimony demonstrates pretext. The court disagrees.

If the record did not contain documentary evidence that defendant decided to terminate plaintiff's employment after her meeting with Mr. Haase and Mr. Bird, the timing in this case would have been

-16-

suspicious, to say the least. But plaintiff provides no evidence outside of her own testimony, that defendant did not legitimately have concerns about her performance. Beginning with Mr. Heredia's May 16, 2016 e-mail, those concerns led to a written warning, and a meeting with Mr. Haase and Mr. Bird to discuss and have plaintiff acknowledge those concerns, all with no evidence that defendant planned to fire plaintiff. Ultimately, based on plaintiff's behavior at that meeting, the record evidence demonstrates that HR and management decided to terminate her employment. Plaintiff's unsupported testimony does not sufficiently undermine the overwhelming evidence that defendant fired plaintiff for a legitimate non-discriminatory reason. For this reason, and the reasons described above, defendant's motion for summary judgment is granted.

**IT IS THEREFORE ORDERED** that plaintiff's harassment claims are dismissed for lack of subject matter jurisdiction for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment (Doc. 50) is granted.

The clerk shall enter judgment in favor of defendant and against plaintiff. This case is closed.

Dated July 16, 2018, at Kansas City, Kansas.

                     s/ Carlos Murguia
                     **CARLOS MURGUIA**
                     **United States District Judge**